Catron, Ch. J.
On the 27th October, 1825, Valentine Matlock was appointed sheriff of Overton, and gave a bond in the penalty of ten thousand dollars with the following condition:
“The condition of the above obligation is such, that whereas the above bound Valentine Matlock was on yesterday, the 27th of this instant, duly elected sheriff of Overton county for the next ensuing two years. Now, if the said Valentine Matlock, sheriff as aforesaid, do well and truly execute and fulfil the'duties of his office as sheriff and collector of the State and county revenue of said county of Overton, and pay over all monies that may be by him collected, or should have been collected, as the law requires, and pay over to the proper claimants as may be required of said sheriff by law, then this obligation to be void, elsetojremain in full force. This day first above written.”
During the term of the sheriff, an execution was put into his hands issuing from the Overton circuit court, in the suit1 of the State Bank against George W. Sevier. He failed to return the execution; and'himself, and Jacob *94 Dillon, William Gore, William L. Armstrong, and Jo- ’ ’ . . , , , sepn Bates, the securities to the bond, were rrioved against for judgment, in the Overton circuit court, .because of the failure to return the execution; and judgment was had.
The material question in the cause is, are the sureties liable for the default’ of the sheriff in not returning the process? This depends on their express covenant.— They owe no duty but suchas the condition of the bond they executed imposes upon them. .Had the bond been executed as required by the act of 1777, ch. S, the obligatory part of it would then have read, “if, therefore, the said [Valentine Matlock] shall well and truly exec'ute, and due return make, of all process and precepts to him directed, and pay and satisfy all fees and sums of money by him received or levied by virtue of any process, into the proper office by which the same by the tenor thereof ought to be paid, or to the person or persons to whom the same shall be due, his, her, or their executors, administrators, altornies, or agents, and in all things well, and truly, and faithfully execute the said office of sheriff during his continuance therein, then the above obligation tobe void, otherwise to remain in full force and effect.”
On a bond with the condition that the sheriff,tcshall well and truly execute, and due return makri, of,all process and precepts to him directed,” does the act of 1803, chapter 18, section 1, authorize a judgment by motion to be taken against the sureties of the sheriff. It is insisted for the plaintiff that the covenants of the sureties of Matlock are the same in substance. If so, the defendants are liable in some form of action. But I think it impossible so to hold. The securities were bound that the sheriff should execute the duties of his office as collector of the State and county revenue,” and “that he pay over all monies that might be by him collected, as required by law.” ' What moneys are .referred to, the taxes, or debts collected on executions, or both, is un *95 certain and immaterial. The sscurities are not sought to be charged for a failure to pay over money collected by the sheriff, but because he failed to execute, and due return make of process to him directed. They did not covenant he should do this; it has been entirely omitted; indeed the condition of the bond seems to have been intended to secure the collection of the revenue, and nothing more.
The act of 1803 provides, “that if any sheriff shall fail or refuse to make return of any execution that may come to his hands on or before the second day of the return term, judgment nláy be rendered against him and his securities. But this can only be done in case the securities are expressly bound in the bond, “that said sheriff shall make due return of process to him directed.” It follows the judgment of the circuit court was not warranted, and mustbe reversed. This construction is in strict conformity to the construction given to appeal bonds. Only two are as yet published, Nichol and M’Alister vs. M’Combs, (2 Yerg. Rep. 83) made in 1822, and Jones vs. Parsons, pronounced in 1829; (2 Yerg. Rep. 321) but they have uniformly been followed in many others, several of which are in'a course of publication. The act of 1794, allowing appeals from the county court, declares the appellant shall enter into bond with two sufficient securities, conditioned “that he will prosecute the appeal with effect, and perform the judgment, sentence, or decree which the superior court shall pass or make thereon, in case such appellant shall have the cause decided against him.”
The appeal bonds in the causes referred to, had the condition “that the appellant should well and truly prosecute his said appeal with effect, or otherwise pay all damages and costs,” leaving out the covenant “that the securities should perform the judgment of the circuit court.” The cause decided in 1829 was for building, and the recovery was for damages; therefore the strict words of the bond, *96 covered the verdict and judgment had in the circuit court; but the securities must have been reached by a construction contrary to the form prescribed by the act of assembly, an'd that forced, for the damages covenanted to be paid, might be the twelve and a half per cent, interest per annum given by the 64th section of the act,, should the judgment be affirmed.
What Judge Haywood says in the opinion of the court ill M’Alister vs M’Combs, is very applicable to the cause before us. “In the condition of a bond something insensible may be1 rejected, or be understood to mean wliat is really intended, but nothing can be' added; and upon the bond, such as it is, must judgment be given, otherwise men would be bound, not by contracts they have entered into, but by what the court might presume they intended to enter into. Their obligations would be framed by the court, not by themselves. If an appeal bond embrace only part of what the act of 1794 orders, it is so far good, but not for more than it embraces.”
To one idea only in the above exposition I object as inaccurate, “that something insensible in the condition of a bond may be understood to mean what it really intended.” I notice the expression because it has a bearing on the bond before us, the condition of which is insensible, save as a collector’s bond; and if the securities to it, are onerated with the debt claimed, it will be “by what the court presume they intended to enter into,” “and their obligation will be framed by the court, not by themselves.” That which is insensible cannot be moulded into sense by the court without the most manifest danger, not to say certainty, of making contracts for men by the mere force of construction. This cannot be done in case of a single bond, which is taken most strongly against the obligor, and especially not, in construing the condition to a bond, because the condition is for the ease' of the obligor, and construed favorably for him.
It is confidently believed no declaration can be framed *97 lo charge the obligors in the bond under consideration, assigning as a breach, that Valentine Matlock failed to make due return of an execution, which came to his hands as sheriff, because there is no covenant in the condition of the bond that he should due return make of process.
Much stress is laid on the fact, that as a collector’s bond the above is informal. This truth is admitted; but as a bond to return process, it wants both form and sub-stancej and, judging from its face, could not have been intended to secure this object, and a history of the records of the Overton county court cannot help it. The bond must be construed by its face, not extraneous circumstances.
Peck, J.
In all cases where the proceedings are given by statute, in a summary way, we have held him making the motion to strict law, so far at least as to compel the party to bring himself within the provisions made for his benefit, and we have rejected intendments to sustain the judgment.
In the case before us, a judgment is asked against the securities without even the formality of notice to them. In the notice to the sheriff, and in the motion predicated upon that notice, the grounds of liability are set out for not returning the execution which had issued in behalf of the plaintiff against Sevier. As the plaintiff presents his case without due forms of pleading, every ground of de-fence must be open to the defendants, who stand as securities, not upon the ground of their being securities, and that, therefore they are on that account to be favored, but, upon the ground that they are to be reached alone upon their bond. The sheriff may be. taken as bound by executing the duties of the office; having held himself out in that character, he is estopped to deny his situation ; but all the liabilities attach to him, regardless of the *98 manner in which, by bond, he may have given assurances , , . . , , , i • for the faithful performance of his duties.
The securities are only bound by the bond they may have given; and to know how far bound, we must necessarily look to the extent of their obligation. There is nothing in the condition providing that the sheriff shall make “due return of process.” This being a statutory bond, and the form given in the act of assembly, as far as the securities are concerned, to bind them, that form should have been pursued substantially at least; there should be enough found in the condition to show, that there has been a breach, not by the use of general terms, such as “that the sheriff shall well, truly and faithfully perform the duty of sheriff according to law, but where the law requires it, as in the case before us, that the obligation shall be “well and truly to execute, and due return make, of process and precepts to him directed:.”1 to be liable for this obligation, it should be shown the securities are bound by the bond.
I will not enquire whether a recovery could be had at common law upon this bond, against the securities: in the attempt to do so, I would be conducted into a train of speculation on the probable form in which pleas for and against it could be presented, as these could be diversified, and might depend much upon the address and skill of counsel; at most, it would be idle conjecture in seeking a result from such a course. If it were left doubtful whether or no a recovery could be had at common law, certainly I would not feel myself justified in giving the judgment on motion, because no one is supposed to be served with notice except the sheriff. So far as the securities are concerned, the proceedings against them are ex parte; they have not been summoned and have no day in court; their liability, where they can be reached on the motion, is made to follow the liability of the sheriff. Hence, in all cases where the motion is given by act of assembly, which takes from the party the forms of plead *99 ing and trial by jury, the proceedings are taken with strictness; the judge who determines both the law and the fact must be fully satisfied upon both before he gives his judgment. On constitutional principles, the right to ren■der these judgments has been much doubted. To sustain them, there ought at least to be, in all things, certainty to a common intent; there is a want of that certainty in the bond, the foundation of this motion.
Not being satisfied that this bond is broad enough to cover the case made in the motion, I am of opinion it ought to have been disallowed.
In giving judgment against the sheriff, the common rate of interest ought to be allowed up to the return day, and then as a penalty, twelve and a half per cent, upon that sum.
Grren, J.
The first and principal objection to this judgment against the securities of the sheriff is, that the condition of the bond does not specify that Matlock, the sheriff, “shall well and truly execute, and due return make of process and precepts to him directed.” It is also contended, that from the condition of this bond it appears that it was taken for the collection and payment of the revenue, and not for the discharge of the duties of sheriff.
It will appear, by reference to the act of 1803, ch. 3, sec. 14, that the sheriff, as collector, is required to execute a bond with security, “conditioned for the collection and payment to the treasurer of the district where the said sheriff resides, of all taxes by him collected or which ought to have been collected,” &c. Now this bond provides, that the sheriff “shall well and truly execute and fulfil the duties of his office as sheriff and collector of the State and county revenue of said county of Overton, and pay over all moneys that may be by him collected or should have been collected, as the law requires, and pay over to the proper claimants as may be required *100 sa‘c^ sbel'iff by law,” &c. By a comparison of this language of the bond under consideration, with the condition prescribed by the act of 1803, for the collector’s bond, it will be seen that they are essentially variant. That act requires the condition to be only, that the collector will collect and pay the taxes to the treasurer; this stipulates that the sheriff will well and truly fulfil the duties of his office of sheriff, and pay over to the proper claimants all moneys by him collected, as the law requires. This undertaking must be understood to be, that he will fulfil the duties of sheriff, and that he will pay to the private persons or “claimants” all moneys he may collect for them. It is true, he is designated in the bond as the “sheriff and collector.” This is awkward and informal, but it does not vitiate his undertaking. It is manifest, that the law, stipulating the condition, which should be in the sheriff’s bond, and that which should be in the collector’s bond, was not before the draftsman of this bond; for the terms of its condition are variant from both. Nevertheless, I can entertain no doubt but that this bond was intended to be the one required by law for the sheriff to give.
I will next enquire, whether it contains a substantial undertaking for the performance of the duty, for failure to do which the present motion was made. By the act of 1777, ch. 8, sec. 2, the sheriff is required to execute a bond with security, conditioned among other things, that he will “well and truly execute and due return make of process and precepts to him directed.” If he fail to return any execution that may come to his hands, issuing from the clerk of the county dr district where he resides, the second day of the term to which the execution is returnable, the act of 1803, chapter IS, section 1, authorizes a judgment to be rendered against him and his securities for the amount of the execution. His duty as sheriff is to make return of the execution as required by law: In this bond the defendants undertake that the sheriff *101 will well and truly execute and fulfil the duties of his office,” &c. Now I ask, is this not substantially saying, that he will “well and truly execute, and due return make of process and precepts to him directed?” If he fail to do so, he does not “well and truly execute and fulfil the duties of his office,” and consequently the condition of his bond is broken, and the defendants, by the terms of their undertaking, become.liable to the plaintiff’s motion.
2. The next question is, whether this bond was properly admitted in evidence in the court below, where the motion was made. It is true, as contended by the counsel for the defendants, that the copy of the bond merely could not properly have been received to prove that the defendants were the securities of the sheriff, if it had been objected to. It ought to have been accompanied by a certified copy from the records of the county court of Overton, showing the appointment of the sheriff, and that the bond was received by the court, and acknowledged by the obligors. Such records accompanying the copy, would have proved it to have been duly executed and received, and consequently would have established the fact, that they were the sheriff’s securities. But the copy of the bond having been offered and read without objection, it was a waiver of such authentication, and an admission that the copy of the bond merely was sufficient, No objection on this account which was not made below, can now be taken. The copy of the bond having been received, it proved that Matlock had been appointed sheriff of Overton county, for the condition recites that fact, and the defendants cannot now dispute it.
3. It is objected that the defendants had no notice of this motion. In answer to this, it is sufficient to say, that the defendants appeared and defended this motion on the merits and that was a waiver of notice.
4/ The remaining question is, as to the amount for which the court ought to have given judgment. The act *102 1^3, ch. 18, sec. 1, authorizes the judgment to be rendered against the sheriff and his securities “for the amount of money and costs mentioned in such execution.” By the act of 1813, ch. 109, it is provided that when a judgment shall be given agreeably to the provisions of the act of 1803, the court shall also give judgment for twelve and a half per cent, on the amount so recovered by way of damages and costs.” The twelve and a half per cent, given by the act of 1813, is in addition to the amount authorized to be recovered by the act of 1803. By the latter act, all that should be due by law on the execution at the time of the motion, was recoverable of the sheriff. The interest from the time of the rendition of the judgment up to the time of the motion, would constitute part of such amount. I think, therefore, that judgment ought to have been rendered for the amount of the judgment against Sevier, the costs, and interest up to the time of the motion at six per cent, and in addition thereto, twelve and a half per cent, ought to have been given on the aggregate of those sums. The judgment having been rendered for twelve and a half per cent, per annum, is erroneous, and ought to be reversed, and such judgment rendered as the circuit court ought to have given.
Judgment reversed.